IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NATASHA CORSO, CHRISTOPHER
GOODWIN and TERRENCE JONES,

                 Plaintiffs,                         OPINION AND ORDER

    v.

                                                            19-cv-868-wmc

JDA ASSOCIATES, INC., JOHN KWITEK
and DAVE KWITEK,

                 Defendants.

In this lawsuit, plaintiffs Christopher Goodwin and Terrence Jones claim that defendants JDA Associates (d/b/a Academy of Beauty Professionals), John Kwitek, and David ("Dave") Kwitek racially discriminated against them in violation of Title VI of the Civil Rights Act of 1964, and 42 U.S.C. Sec. 1981. Plaintiff Natasha Corso also brings suit against these same defendants, alleging that they retaliated against her for opposing these violations, as well as that defendant John Kwitek violated Title VII of the Civil Rights Act of 1964 through a campaign of sexual harassment against her. Before the court is defendants' motion to dismiss with prejudice all claims aside from Corso's Title VII claim. (Dkt. #13.) For the reasons that follow, the court will deny that motion.

ALLEGATIONS OF FACT[1]

**A. Parties**

Defendant Dave Kwitek was both the CEO of JDA Associates, Inc., and plaintiff

---

[1] For purposes of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

Natasha Corso's immediate supervisor during the events described below. JDA Associates (or "JDA"), is a Wisconsin corporation that does business as Academy of Beauty Professionals ("the Academy"), and operates cosmetology schools across the state. Dave's father, defendant John Kwitek, was also involved in the operations of JDA.

Plaintiff Corso was employed by JDA Associates from July 2017 to November 2018, serving as the Director of Enrollment for the Academy of Beauty Professionals. Corso began with JDA in Green Bay, Wisconsin, before transitioning to the company's Madison, Wisconsin, location. Plaintiffs Terrence Jones and Christopher Goodwin are Black males, who were previously enrolled in the Academy of Beauty Professionals. Jones graduated from the school's Madison location in 2018, and Goodwin transferred into and eventually graduated from the school's Green Bay location in 2017.

## B. Corso's Allegations of Sexual Harassment

Plaintiff Corso alleges that on average twice a week, while she worked in JDA's Green Bay location, John Kwitek would visit her office for approximately two and a half hours each visit. She also alleges that these visits were frequently accompanied by inappropriate and unwelcome sexual remarks, recounting multiple, specific lewd comments that ranged from vulgar jokes to overt requests for sex. (Compl. (dkt. #1) ¶¶ 418-22.) Despite John Kwitek's reoccurring, perverse behavior, Corso further explains that she was reluctant to complain because of her perception that previous employees had been fired for raising similar complaints. (*Id.* ¶ 426.) According to Corso, John's sexual harassment continued until she transferred away from Green Bay to JDA's beauty school in Madison.

2

C. **Corso's Allegations of Retaliation for Opposing Racial Discrimination and Sexual Harassment**

Throughout Corso's employment with JDA, her responsibilities included processing all applications to the local beauty school where she worked and enrolling accepted students, with a new class of students being enrolled once every three to four weeks. In February 2018, while she was still employed in Green Bay, Corso alleges that John Kwitek instructed her not to enroll Black students into the program or even consider them as possible "leads" for enrollment. Nonetheless, Corso treated Black prospective students in an evenhanded and nondiscriminatory fashion.

Corso further recounts that on one occasion, she had been welcoming a Black female prospective student to the Green Bay location while John was present. Corso alleges that he commented, "If you enroll her and she's out there on the floor, what are all the pretty little white girls going to think when they see her?" (Compl. (dkt. #1) ¶ 430.) Corso brought this comment to Dave Kwitek's attention when she saw him next, to which he responded, "That happens a lot in Madison, too. You just have to make the process really hard for them so they don't go through with it." (*Id.* ¶ 432.)

In another alleged incident, this time exemplifying additional, sexual harassment towards female students, Corso alleges that a white female student confided to her that John Kwitek had approached her and said, "If you can't hear me that means you're horny, and we'll keep that as our secret." (*Id.* ¶ 441.) Corso and the student made a record of what occurred, which Corso then gave to Dave Kwitek, asking him if she would be fired for filing a complaint. Kwitek did not respond, nor was the topic of the complaint raised

3

again with Corso.[2]

Shortly after this event, in May of 2018, Corso transitioned from JDA's Green Bay location to its Madison location, for reasons unrelated to John and Dave Kwitek's racial or sexual statements. When she arrived, Corso alleges that plaintiff Terrence Jones was the only Black student enrolled in the Madison beauty school. Corso further alleges that she continued to ignore instructions to discriminate against Black, prospective students and, in fact, enrolled a class with multiple students of color. When John Kwitek visited the Madison school and met Corso's newly enrolled class, however, she claims that he took time to engage with and introduce himself to the white students, but did not do so with the Black students.

In another incident early in Corso's time in Madison, a Black student was experiencing attendance issues in his first two weeks of class. Sue Kwitek -- not a party to this suit, but the mother of Dave and wife of John -- was working in the operations of JDA and she instructed Corso to expel the student. Corso did as she was told, informing the student that he was being expelled. Corso also advised the student that he should write a letter to JDA to appeal this decision and allowed the student to use her office to write his appeal. Shortly thereafter, John Kwitek visited with Corso personally in Madison and addressed her in an irritated manner because she had allowed the student to write an appeal in her office. John also made clear that he did not want to give a Black student another

---

[2] Even if this record was maintained in the ordinary course of JDA's business, this statement likely would not come into evidence for the truth of the matter asserted against John Kwitek, but Corso's account and Dave Kwitek's failure to respond (and apparent failure to act) may well be admissible as an adopted statement of a party opponent, as well (perhaps) as state of mind evidence.

4

chance in the school. Later, John sent the same basic message by email. (*Id.* ¶¶ 458-60.)

Sometime after this episode, John and Sue Kwitek also told Corso that she could not enroll a Black prospective student because of a felony conviction on his record, even though a white student had the same felony conviction which arose out of a more recent incident. Corso also recalls a series of events in which Dave Kwitek remarked about the smell of a Black, female prospective student, instructed Corso to ignore that same person's calls, and finally instructed Corso to tell her that there were issues with her financial aid even though no such issues existed. Despite Dave Kwitek's statements, Corso nonetheless admitted this prospective student.

Around three weeks before her termination, Corso also claims that John Kwitek remarked that she "was enrolling a lot of Black students, and that if they were going to do that they may as well shut down the school." (*Id.* ¶ 461.) Corso then allegedly asked Dave Kwitek in November of 2018 if she would be fired for enrolling a Black female student after he had instructed her to lie regarding supposed financial aid issues, to which Dave Kwitek allegedly responded, "oh, I don't know, we'll see." (*Id*. ¶ 468.) Days later, Corso was terminated.

### D. Plaintiffs' Allegations of Racial Discrimination
#### 1. Terrence Jones

Plaintiff Terrence Jones was enrolled as a student at JDA's Madison's Academy of Beauty Professionals until November of 2018. Jones alleges that the school's teachers did not teach students how to cut and style Black people's hair during the time that he was enrolled, and the school's social media director was "not allowed" from posting pictures of

5

Black students online. Jones also alleges that the school arranged for all students at the Madison location to be photographed for Valentine's Day of 2018, yet he was not invited to be a part of the class picture. Instead, the only students photographed were white.

### 2. Christopher Goodwin

Christopher Goodwin was enrolled at JDA's Green Bay Academy of Beauty Professionals, transferring to the school in 2017 to study barbering. Goodwin alleges that he was charged more for tuition than white students, and he was never given the standard-issue textbook and equipment kit that all of the white students received. Further, when Goodwin asked Sue Kwitek why he was being charged a higher rate, she did not give him an answer. Goodwin also alleges that despite repeatedly asking the Kwiteks for these supplies, they were never provided.

Although less clearly germane to his claims in this case, Goodwin next reports issues with the delivery of instruction at the school, alleging that: (1) the Academy was not accredited for barbering; (2) the Kwiteks told him that the school would be accredited for barbering by the time that he finished his hours in the program; and (3) he was required to prolong his time at the school through additional practice and written tests as a stalling tactic apparently because the Academy was still not accredited for barbering by the time he completed his hours in September of 2017.

Another material slew of issues arose when Goodwin did not receive his diploma in his expected timeframe. According to Goodwin, he met with Corso and Dave and John Kwitek at the Academy in October of 2017. In this meeting, Goodwin remarked that the school was supposed to pay an outside company for his licensure test, which the Academy

failed to do. Goodwin also reiterated his claim that he had been charged more than other students, to which John Kwitek responded that the Academy was a private school with the right to charge whatever it wanted to charge. John allegedly made several, other striking comments in the back and forth, including that "Obama messed it up for your people"; that the Academy's curriculum is a "white curriculum"; and that Black people wanted to cut hair in their basements instead of getting jobs in the field. (Compl. (dkt. #1) ¶ 491.) Finally, plaintiffs allege that John Kwitek called Goodwin a "spear-throwing jungle bunny" in a separate conversation with Dave Kwitek and Corso. (*Id.* ¶ 439.)

Following this meeting, Goodwin attests that he called the Wisconsin Department of Safety and Professional Services ("DSPS") regarding his barbering certification, only to be told that they had no records of him completing any hours of instruction. Plaintiffs also claim that someone from DSPS called John Kwitek after that conversation to inform him that Goodwin was contemplating filing a complaint. In a later call to the Academy, Goodwin asked to speak to Prudence Walker about how to obtain his barbering license. In responding to this call, Corso advised him to avoid coming to the school because John Kwitek had ordered the staff to call the police if Goodwin came to the school again. Plaintiffs also allege that John Kwitek told another JDA employee "If you see him again at the school, you should put a noose around his neck and hang him from the telephone pole." (*Id.* ¶ 494.) Goodwin later received an email from Sue Kwitek, which stated that the certificate affirming his instruction hours -- the same mentioned as lacking by the DSPS above -- had been submitted to the state, and he was subsequently eligible to take his required tests. (*Id.* ¶ 495.)

OPINION

Defendants seek partial dismissal of plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Designed to test the complaint's legal sufficiency, however, dismissal under Rule 12(b)(6) is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007). "To survive a motion to dismiss under Rule 12(b)(6)," therefore, a plaintiff must allege sufficient facts to (1) "state a claim for relief that is plausible on its face" and (2) give the defendant fair notice of what the claim is and the grounds upon which it rests. *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570); *see also Twombly*, 550 U.S. at 555.

Under this plausibility standard, the court must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). Moreover, in evaluating the sufficiency of the complaint, the court must "draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). As a result, plaintiffs need not plead meticulous elements or theories; they need only present facts -- not mere recitations of elements -- that would form a legitimate complaint if true. *See, e.g., Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). As explained below, plaintiffs have done just that.

I.  **Plaintiff Corso's Title VI Claim**

Defendants seek dismissal of plaintiff Corso's Title VI claim as barred by 42 U.S.C. § 2000d-3 because, as an employee of JDA Associates, her claim concerns employment practices of an institution "receiving federal funds." Section 2000d-3 provides in pertinent part:

> Nothing contained in [Title VI] shall be construed to authorize action under [Title VI] by any department or agency with respect to any employment practice of any employer . . . *except where a primary objective of the Federal financial assistance is to provide employment.*

42 U.S.C. § 2000d-3 (emphasis added); *see also Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 636–37 (1984) (extending the so-called "primary objective limitation" to private actions). Further, in *Ahern v. Board of Education of City of Chicago*, 133 F.3d 975 (7th Cir. 1998), the Seventh Circuit recognized that a Title VII claim is subject to this primary objective for employment discrimination by institutions receiving "federal funds" *unless* "(1) providing employment is a primary objective of the federal aid, *or* (2) discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid." *Id.* at 978 (emphasis added) (internal quotation marks omitted) (quoting *Trageser v. Libbie Rehab. Center, Inc.*, 590 F.2d 87, 89 (4th Cir. 1978)). Plaintiffs concede that the first exception is not available to Corso,[3] but maintain that the second matches her situation. Defendants reply that Corso cannot state a claim on the latter *Ahern*

---

[3] This concession is understandable given that the federal financial aid supports the cosmetology students, although it was apparently tied to the ultimate good of achieving a qualifying license for work in that field. Regardless, that issue is not before this court. Whether federal aid were expressly tied to both vocational education *and* placement in a position of employment would appear to be a closer question.

exception because any alleged employment discrimination by defendants did not, in the end, cause *Corso* to discriminate against the primary beneficiaries of financial aid -- JDA's cosmetology students. (Defs.' Br. (dkt. #13) 6.)

As the court understands the defendants' reasoning, Corso has no claim because either the alleged retaliatory measures were not harsh enough or Corso was too high of character to buckle to her employers' allegedly discriminatory wishes. However, this reasoning would appear to fail on at least two grounds. As an initial matter, defendants view Corso's apparent effort to maintain a level playing field for acceptance and student success as the sole measure for discrimination against the primary beneficiaries -- JDA's students benefitting from federal funds. In other words, defendants argue that Corso herself -- allegedly despite pressure from her employer -- refused to participate in discriminating against recruiting or assisting minority students. (*Id.*) However, actual enrollment or student progress is not the only measure of how students of color may be discriminated against. Plaintiffs allege facts that, if true, also reveal that Corso was *retaliated against* by not hindering Black students who experienced discrimination while applying and after enrolled at the Academy. Relatedly, under pressure from the Kwiteks, she also apparently repeatedly chose not to speak up about *their* discriminatory actions.

Regardless, a trier of fact could reasonably infer that firing Corso for refusing to participate in discrimination against minority applicants and students, as alleged here, would necessarily cause discrimination against primary beneficiaries of financial aid directly by allegedly remove a principal obstacle to the ongoing discriminatory actions and indirectly by further fostering a message to other employees that enrolling or assisting

10

minority students will result in your discharge. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005) ("Without protection from retaliation, individuals who witness discrimination would likely not report it, indifference claims would be short circuited, and the underlying discrimination would go unremedied."). As a result, in Corso herself, who refused to do so, accepting all allegations as true and drawing all reasonable inferences in her favor, at this early stage of litigation, defendants have simply failed to establish that Corso's Title VI claim fails as a matter of law.

**II. Plaintiffs Jones and Goodwin's Title VI and § 1981 Claims**

Defendants also seek dismissal of plaintiffs Jones and Goodwin's Title VI and § 1981 claims. The same analysis applies to both of their claims. *See L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 695 (7th Cir. 2017). To state a claim, plaintiffs must allege that they were (1) members of a protected class, (2) meeting the school's legitimate educational expectations, and (3) experienced materially adverse and worse treatment than students not in the protected class. *See, e.g.*, *Brewer v. Bd. Of Trustees of Univ. of Ill*, 479 F.3d 908, 921 (7th Cir. 2007) As stated above, with respect to Corso's claim, dismissal under Rule 12(b)(6) is warranted only if no recourse could be granted under any set of facts consistent with the allegations. *See Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 563.

Although a far weaker argument since Title VI is no bar to their claims at all, defendants contend that plaintiffs Goodwin and Jones have failed to allege that they experienced "materially adverse and worse treatment" than their white peers. Generally, if this court were to test defendants' position under the Supreme Court's standard in *Iqbal*, Jones and Goodwin's allegations would proceed unless they were nothing more than

11

"unadorned, the-defendant-unlawfully-harmed-me accusation[s]," which fail to establish even the facial plausibility of plaintiffs' racial discrimination claims. *Id.* at 1949. In cases post-dating *Iqbal* and *Twombly*, however, the Seventh Circuit has added a slightly more specific gloss for discrimination claims requiring the type of discrimination that occurred, by whom, and when. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (describing pleading requirements to state a claim of discrimination under the Fair Housing Act).

Jones and Goodwin's allegations unquestionably meet these minimal requirements. Specifically, Goodwin alleges facts that, if taken as true, demonstrate that: (1) he is a member of a protected class (Black) and (2) who was charged a higher tuition because of his race, was denied information about his financial aid, received interior equipment given to white students, had his testing or licensure handled more poorly than white students, and was threatened with both police removal and "a noose around his neck" when he inquired about his testing and licensure. (Pls.' Opp'n (dkt. #16) 8-9.) Similarly, Jones alleges intentional exclusion from Academy photography and media based on his race, albeit admittedly with less specificity than Goodwin. Thus, both have sufficiently met the requirements necessary to satisfy Rules 8 and 12, if perhaps just barely in Jones' case. *See, e.g., Stumm v. Wilkie*, 796 F. App'x 292 (7th Cir. 2019) (holding that a claim survives dismissal if it alleges a type of discrimination based on one's protected status, when it occurred, and by whom); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (reiterating that "[a] complaint that identified 'the type of discrimination' the plaintiff thought occurred, 'by whom, . . . and when' was 'all [the

12

plaintiff] needed to put in her complaint'" to plead a discrimination claim) (citing *Swanson*, 614 F.3d at 405). As such, the court will also deny this portion of defendants' motion.

ORDER

IT IS ORDERED that:

1) Defendants' partial motion to dismiss (dkt. #13) is DENIED.

2) The clerk's office is directed to set this case for a status conference with Judge Crocker to reset a schedule and trial date.

Entered this 27th day of January, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge